1

2 **FILED**

3

4 APR 0 1 2011

5 RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT

6 NORTHERN DISTRICT OF CALIFORNIA

7

8 **UNITED STATES DISTRICT COURT**

9 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 **SAN JOSE DIVISION**

11

| | |
|---|---|
| 12  Richard Dean CLARK, | Case Number 5-97-cv-20618-JW |
| 13          Petitioner, | <u>DEATH-PENALTY CASE</u> |
| 14       v. | ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S |
| 15  Michael MARTEL, Acting Warden of San Quentin State Prison,[1] | SECOND MOTION FOR DISCOVERY |
| 16 | |
| 17          Respondent. | [Doc. No. 467] |

18

19        Presently before the Court in this capital habeas action is Petitioner's Second Motion for

20 Discovery.  The Court will grant the Motion in part and deny the Motion in part as indicated

21 below.

22

23                                         I

24        "A habeas petitioner . . . is not entitled to discovery as a matter of ordinary course."

25 *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rather, in a federal habeas action, "[a] judge may,

26

27        _____

        [1] Michael Martel is automatically substituted as Respondent pursuant to Federal Rule of Civil
28 Procedure 25(d).

1  for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure

2  and may limit the extent of discovery." Habeas Corpus R. 6(b).  Good cause exists "where

3  specific allegations before the court show reason to believe that the petitioner may, if the facts

4  are fully developed, be able to demonstrate that he is entitled to relief." *Bracy*, 520 U.S. at

5  908–09 (internal quotation marks, ellipsis, and citation omitted).

6

7                                                II

8                                                A

9          In Claim 3 of his operative petition, Petitioner alleges that trial counsel was ineffective by

10  failing to discover evidence of his innocence or reduced culpability, and that the prosecution

11  failed to disclose such evidence and used false evidence. (Doc. No. 451 at 65–77.)  Petitioner

12  claims that there was evidence of the culpability of a person named Dean Michael "Dino"

13  Stevens, and that the forensic evidence tying Petitioner to the crime was incorrect and falsified by

14  the state's criminalist, Linton von Beroldingen (who refuses to be interviewed).  (Doc. No. 467 at

15  5–6.) Petitioner asserts that good cause exists to obtain the following through subpoena:

16  (1)     all law-enforcement, probation-department, and District Attorney files and notes

17          concerning Stevens, including files of the Mendocino County and Shasta County

18          probation departments;

19  (2)     any and all polygraph examinations of Stevens and any other witnesses at Petitioner's

20          trial, including charts and pre- and post-polygraph interviews (according to Petitioner,

21          Stevens failed his polygraph examination);

22  (3)     any and all reports or notes of investigators and prosecutors (the California Department of

23          Justice, the Ukiah Police Department, the Mendocino County Sheriff's Office, and the

24          Mendocino County District Attorney's Office) concerning statements made by or

25          interviews of Dean Stevens and the persons who were with Stevens and Petitioner on the

26          night of the homicide (Tami Scribner, David Smith, Robyn Boyd, Michelle Stevens,

27          Matthew Williams, and Shawn Madden);

28  (4)     all files and notes of California Department of Justice criminalists in this matter; and

1    (5)    the deposition of Beroldingen.[2]  (*Id.* at 9.)

2         The operative petition contains twelve pages of detailed factual allegations in connection

3    with Claim 3.  (Doc. No. 451 at 65–77.)  If the facts are developed, Petitioner may be entitled to

4    relief.  Indeed, Respondent does not deny that Petitioner has established good cause for most of

5    the discovery requests regarding Claim 3.

6         Respondent does say that Petitioner already has received some of the documents he seeks,

7    that some of the documents may no longer exist, and that state law does not entitle Petitioner to

8    other documents.  (Doc. No. 472 at 7–11.)  However, documents that were previously produced

9    or that no longer exist need not be produced,[3] and state-law limitations on postconviction

10   discovery are not relevant to whether good cause is shown for discovery in federal habeas

11   proceedings.  Respondent is correct that the Court previously denied some of the discovery

12   requests without prejudice, (*e.g., id.* at 10), to a renewed motion seeking the documents from the

13   appropriate agencies by subpoena rather than directly from Respondent himself.  As it is that

14   renewed motion that is presently at issue, the earlier denial is no longer relevant.[4]

15        Petitioner has demonstrated good cause for his discovery requests in connection with

16   Claim 3.  Accordingly, the Court will authorize the requested discovery indicated above.

17

18                                        B

19        In Claim 4, Petitioner contends that the evidence seized from him and his custodial

20   statements were taken in violation of his constitutional rights and therefore should have been

21   suppressed.  (Doc. No. 451 at 78–102.)  In connection with this claim (and related claims[5]),

22

23         [2] Petitioner will depose Beroldingen in connection with other claims as well.

24         [3] Petitioner concedes that his "requests in the present Motion do not seek materials previously
25   disclosed."  (Doc. No. 487 at 2.)

26         [4] The discussion in this paragraph is applicable to all of the discovery requests at issue in the
     present motion.

27
         [5] Related claims include Claim 13 (trial counsel failed to prepare defense expert Dr. Peter
28   Mayland for the suppression hearing); Claim 14(f) (trial counsel failed to present evidence that the

                                        3

1   Petitioner states that "the prosecutor withheld and the defense failed to pursue at least three

2   pieces of critical information," (Doc. No. 467 at 10): *first*, a Mendocino County Sheriff's Office

3   report that "contradict[s] the interrogating officers' testimony that they were unaware of the

4   victim's wounds," (*id.*), prior to interrogating Petitioner in the patrol car, and that therefore

5   supports Petitioner's claim that that interrogation was suggestive and coercive; *second*, Assistant

6   District Attorney Hickok's handwritten notes indicating that one of the interrogating officers,

7   Detective Edgar Gall, stated that the officers "were trying to calm [Petitioner] during the ride in

8   the patrol car," (*id.*), "contradict[ing] their contention that [Petitioner] was very calm and

9   collected during this time (and, therefore, voluntarily waived his rights and was only later

10   inventing distress and intoxication)," (*id.* at 10–11); and *third*, a report from mental-health

11   professionals at the jail that "would have greatly substantiated his claims that he was unable to

12   adequately understand and knowingly and intelligently waive his rights," (*id.* at 11).  In light of

13   this, Petitioner seeks by subpoena to obtain or conduct the following:

14   (1)   all reports and notes concerning Petitioner's statements from the investigating entities and

15         personnel, including any interviews by the prosecutor or his agents with the various

16         Ukiah law-enforcement officials;

17   (2)   the interrogating officers' (Detectives Gall and Fred Kelley) notes of their conversations

18         with Petitioner;

19   (3)   all of the notes of Officer McBride, who interacted with Petitioner at the crime scene and

20         the police station prior to the interviews by Gall and Kelley, concerning Petitioner and the

21         investigation of the crime;

22   (4)   all of the notes of District Attorney investigator Richard Finn;

23   (5)   all reports and notes of the Ukiah Police Department, the Mendocino County Sheriff's

24         Office, the Mendocino County District Attorney's Office, and the Office of the Attorney

25         General of California concerning the statements given by Petitioner, including any

26

27   ────────────────

28   prosecution theory as to cause and manner of death was erroneous); and Claim 20 (the prosecution failed
     to disclose exculpatory evidence).

4

1    reports, notes, or documentation by Captain Maxson, who was present during Petitioner's

2    initial interactions and his taped statement; and

3    (6)    depositions of Gall and Kelley.[6] (*Id.*)

4    Respondent does not deny that Petitioner has established good cause for these discovery

5    requests, as Petitioner may be entitled to relief if the facts underlying Claim 4 are developed;

6    Respondent merely repeats arguments, (Doc. No. 472 at 12–13), that the Court rejects elsewhere

7    in this order. Good cause for the requests having been established, the Court will authorize

8    Petitioner to conduct the requested discovery.

9

10                                          C

11    Petitioner alleges in Claim 5 that he was denied conflict-free representation due to the

12    successful campaign of his attorney, Susan Massini, to be elected District Attorney of Mendocino

13    County while Petitioner's case was pending. (Doc. No. 451 at 103–17.) Petitioner contends,

14    inter alia, that the District Attorney's Office was aware of the conflict during the campaign and

15    continued to work on Petitioner's case subsequent to Massini's election, and that Massini and her

16    office leaked information to the Office of the Attorney General, which prosecuted the case.

17    (Doc. No. 467 at 12.) In connection with this claim, Petitioner seeks to obtain the following by

18    subpoena:

19    (1)    any and all memoranda, notes, or reports indicating contacts and communications

20           concerning Petitioner's case between members of the Ukiah Police Department, the

21           Mendocino County District Attorney's Office, and the Office of the Attorney General;

22    (2)    any and all memoranda, notes, or reports of Assistant District Attorney Hickok

23           concerning Petitioner's case;

24    (3)    any files, memoranda, notes, or reports in the possession of the Mendocino County

25           District Attorney's Office concerning Petitioner's case;

26    (4)    any and all memoranda, notes, or reports in Massini's possession concerning Petitioner's

27    _____

28    [6] Petitioner will depose Kelley in connection with other claims as well.

1  case;

2  (5)  any and all memoranda, notes or reports concerning Petitioner's case that are in the

3  possession of former Assistant District Attorneys Hickok and Eckhoff, both of whom

4  allegedly worked on Petitioner's case during Massini's campaign and subsequent to her

5  election; and

6  (6)  depositions of prosecutor Eugene Kaster, District Attorney investigator Finn, and

7  Hickok.[7] (*Id.* at 12–13.)

8  　　　　Respondent argues that Petitioner has not established good cause for these requests

9  because it is "purely speculative" that "Massini would have felt compelled to assist the

10  prosecution in order to obtain the support of law enforcement." (Doc. No. 472 at 14.)  However,

11  the operative petition contains fifteen pages of specific factual allegations, not mere speculation.

12  (Doc. No. 451 at 103–17.)  For example, Petitioner alleges that Massini insisted that defense

13  expert Dr. Rex Beaber memorialize his preliminary and unreliable impressions of Petitioner, over

14  Beaber's objections and solely for inappropriate reasons related to her campaign, and then caused

15  the disclosure of Beaber's letter to the prosecution, which used the letter as "a center piece [sic]

16  of the prosecution's case, allowing the prosecutor to assert (erroneously) that [Petitioner] had a

17  high IQ and was a sexual psychopath." (*Id.* at 112–13.)  If the facts underlying these specific

18  factual allegations are developed, they may establish Petitioner's entitlement to relief.

19  Accordingly, Petitioner has established good cause for the requested discovery, which the Court

20  will authorize.

21

22  　　　　　　　　　　　　　　　　　　D

23  　　　　In Claim 6, (*id.* at 117–38), and related claims,[8] Petitioner alleges that his trial counsel

24  suffered from a conflict of interest due to counsel's representation of seventeen different

25  _____

26  　　[7] Petitioner will depose these persons in connection with other claims as well.

27  　　[8] Related claims include Claim 10 (trial counsel failed to present evidence of Petitioner's
substance abuse), Claim 14(e) (trial counsel failed to use discovery materials), Claim 20 (the prosecution
28  failed to disclose exculpatory evidence), and Claim 21 (the prosecution introduced false testimony).

6

1   witnesses and potential witnesses and that Petitioner was prejudiced thereby.  Petitioner has

2   narrowed his related discovery requests.  (Doc. No. 487 at 18–19.)  To develop the facts

3   regarding trial counsel's alleged conflicts, Petitioner requests the following by subpoena:

4   (1)    all files from the California Department of Justice, the Ukiah Police Department, the

5          Mendocino County Sheriff's Office, the Mendocino County Superior Court, the

6          Mendocino County Probation Department, and the Mendocino County District Attorney's

7          Office concerning witnesses Matthew Williams, David Smith, Dino Stevens, Robyn

8          Boyd, Ramon de los Santos, Michael and Sandra Taylor, Donald and Brenda Tindall, and

9          Valentino Perez, as well as potential witnesses Mark Finch, William E. Kidd, Lorena

10         Bruhn, Vincent Rutter, Robert Brackett, and John Strobridge, although for the potential

11         witnesses, the request is confined to information from before and during the trial (through

12         its conclusion in 1987);

13   (2)    from the same entities, any and all information concerning these witnesses and potential

14         witnesses to events occurring on and before the night of the offense bearing on

15         Petitioner's mental state, including but not limited to their observations of Petitioner's

16         behavior before or after the offense, Petitioner's use of mind-altering substances and their

17         effects on him at any time prior to and on the night of the offense, and any and all other

18         information bearing on the credibility, reliability, and/or bias of these witnesses and

19         potential witnesses; and

20   (3)    all rap sheets of these witnesses and potential witnesses.  (Doc. No. 467 at 14–15; Doc.

21         No. 487 at 18–19.)

22         Once again, Respondent does not deny that Petitioner has established good cause for

23   these discovery requests, as Petitioner may be entitled to relief if the facts underlying Claim 6 are

24   developed.  Respondent merely repeats arguments made in connection with other discovery

25   requests, (Doc. No. 472 at 17–18), that the Court already has rejected.  Good cause for the

26   requests having been established, the Court will authorize Petitioner to conduct the requested

27   discovery.

28

7

E

Issues concerning the testing of samples of Petitioner's blood, urine, and hair, as well as psychological testing of Petitioner, are central to Claims 7–10 regarding Petitioner's substance abuse.[9] (Doc. No. 451 at 138–70.) Petitioner has narrowed his requests for discovery in connection with these claims. (Doc. No. 487 at 23.) To substantiate these claims, Petitioner requests the following by subpoena:

(1)     identification by the California Department of Justice of any and all samples taken by law enforcement of Petitioner's hair and blood and all notes, photographs, and reports related thereto;

(2)     any and all reports, notes, memoranda, and documentation of the Department of Justice, the Mendocino County District Attorney's Office, and the Ukiah Police Department regarding samples of Petitioner's blood and hair, their testing, and the testing results;

(3)     any and all reports, notes, memoranda, and documentation of the Department of Justice, the Mendocino County District Attorney's Office, and the Ukiah Police Department of contacts with the testing entities regarding Petitioner and the transfer of Petitioner's samples, as well as any information about the testing entities' methodologies, reporting, and interpretation that reflects past errors or misconduct (such as misreporting testing that was done or testing incorrectly);

(4)     any and all reports, notes, memoranda, and documentation, including lab notes, lab runs, and copies of laboratory testing, from the Department of Justice, Mendocino County District Attorney, Ukiah Police Department, and their agents concerning the testing of any samples done by the Central Pathology Laboratory, the Chemical Toxicology Institute, and any Department of Justice laboratories in connection with Petitioner's case;

(5)     any and all reports, notes, memoranda, and documentation of the Department of Justice, Mendocino County District Attorney, and Ukiah Police Department concerning testing

---

[9] These issues are also related to Claim 20 (the prosecution failed to disclose exculpatory evidence).

Case No. 5-97-cv-20618-JW
ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S SECOND MOTION FOR DISCOVERY (DPSAGOK)

1   methodologies and protocols of the various labs and agencies involved in the testing of

2   any samples done in connection with Petitioner's case, as well as the billing for testing

3   done by the various labs and agencies involved in the testing of any samples done in

4   connection with Petitioner's case; and

5   (6)     the deposition of Assistant District Attorney Eckhoff. (Doc. No. 467 at 18–19; Doc. No.

6           487 at 21–25.)

7           Petitioner alleges that accurate testing would have produced results such that he would

8   have been neither convicted nor condemned, as the prosecutor relied on inaccurate tests in

9   obtaining Petitioner's conviction and sentence. The discovery Petitioner requests bears on the

10  accuracy of the tests that were performed. Accordingly, Petitioner has demonstrated good cause

11  for these discovery requests, which the Court will authorize.

12

13                                              F

14          Petitioner contends in Claim 14(f) that he received ineffective assistance of counsel due

15  to trial counsel's failure to investigate, prepare, and present evidence that the prosecution's

16  theory as to the cause and manner of death was erroneous.[10] Petitioner alleges that a proper

17  investigation of the cause and manner of death would have yielded evidence that would have

18  disproved the prosecution's theory of the homicide, thereby undermining evidence of, inter alia,

19  Petitioner's alleged mental state, and ensuring that Petitioner would have avoided a first-degree

20  murder conviction and death sentence. (Doc. No. 451 at 250–57.) To develop the relevant facts,

21  Petitioner seeks to obtain by subpoena from the Mendocino County District Attorney's Office,

22  the Mendocino County Sheriff's Office, and the California Department of Justice any and all

23  reports, notes, files, photographs, or memoranda concerning the nature of the victim's wounds,

24  blood-spatter evidence, forensic examination of the scene, and opinions regarding such

25  examinations. (Doc. No. 467 at 19–20.) Such materials are highly relevant to the cause and

26  manner of the victim's death. Accordingly, Petitioner has good cause for this request, and the

27  _____

28          [10] Claim 20 (the prosecution failed to disclose exculpatory evidence) is related to this claim.

9

1   Court will authorize the requested discovery.[11]

2

3                                                G

4          Dr. Peter Mayland, a psychiatrist, was appointed to assist trial counsel prior to and during

5   Petitioner's trial. At a pretrial suppression hearing, Mayland disclosed privileged statements by

6   Petitioner that were highly prejudicial. In Claim 13, Petitioner alleges that trial counsel rendered

7   ineffective assistance by failing to prepare Mayland prior to the suppression hearing and by

8   failing to obtain an order protecting such testimony. (Doc. No. 451 at 221–26.) Petitioner

9   further contends, in Claim 22, that his rights were violated by the prosecution's use at trial of

10  Mayland's suppression-hearing testimony. According to Petitioner, his trial counsel had reached

11  an oral agreement in chambers that these statements would not be used at trial and had relied

12  upon that agreement. (*Id.* at 370–77.)

13         To demonstrate the existence of this agreement, Petitioner seeks to subpoena the trial

14  judge's notes regarding the relevant events. Respondent contends that such notes are not relevant

15  to Petitioner's claim of ineffective assistance of counsel because "the error, if any, is grounded

16  not so much in the failure to get an agreement as in the failure to ensure that it was placed on the

17  record." (Doc. No. 472 at 23.) However, the existence of an agreement is a precondition to any

18  failure to place an agreement on the record. Accordingly, unless Respondent is willing to

19  stipulate to the existence of an agreement, Petitioner has demonstrated good cause for this

20  discovery request. The Court therefore will authorize this discovery, subject to the submission of

21  a stipulation by the parties that would make the discovery moot.

22

23

24

25      [11] Respondent asks the Court to reconsider its determination that Claim 14(f) and other claims
26  are not procedurally defaulted. (Doc. No. 472 at 12; *see also id.* at 19.) The Court well may have to do
    so at an appropriate time. *See Walker v. Martin*, 131 S. Ct. 1120 (2011). The Court nonetheless will
27  authorize the relevant discovery at this time owing to the current posture of the present action, as
    Petitioner may be able to establish cause and prejudice to overcome any default, and it would be
28  disruptive to the orderly progress of the action to defer ruling on the relevant requests.

### H

In Claims 14(b) and 18, Petitioner contends that his right to be present at all critical stages of the proceedings against him was violated due to his absence from certain in-camera discussions. (Doc. No. 451 at 230–35; *id.* at 342–49.) To support this claim, Petitioner wishes to subpoena the trial prosecutors' and judge's notes of unreported events at which Petitioner was not present. (Doc. No. 467 at 21.) Respondent appropriately does not deny that there is good cause for this discovery request, as Petitioner may be entitled to relief if he is able to prove his allegations in connection with these claims. Respondent merely repeats arguments made previously in connection with other claims, (Doc. No. 472 at 24), that the Court already has rejected. Good cause for this request having been established, the Court will authorize the requested discovery.

### I

Petitioner alleges in Claim 15(b) that the prosecutor discriminated on the basis of race when exercising peremptory challenges. (Doc. No. 451 at 296–304.) In connection with this claim, Petitioner would like to obtain by subpoena the prosecution's notes regarding jury selection. (Doc. No. 467 at 21.) Once again, Respondent does not contest Petitioner's showing of good cause. Rather, Respondent points out that the Court previously granted him summary judgment on this claim. (Doc. No. 472 at 24.) However, that determination was based on the record as it currently exists and without prejudice to Petitioner being given the opportunity to develop the relevant facts. If the facts are developed, Petitioner may be entitled to relief on Claim 15(b). Accordingly, the Court will authorize the requested discovery.

### J

In Claim 20, Petitioner asserts that the prosecution failed to disclose material and exculpatory evidence. (Doc. No. 451 at 352–65.) Petitioner seeks to obtain by subpoena, from the Mendocino County District Attorney's Office, the Mendocino County Sheriff's Office, and the California Department of Justice, any and all reports, notes or memoranda concerning

11

1   Petitioner's jail records, including when they were obtained, by whom, and under what
2   circumstances they were revealed.  (Doc. No. 467 at 22.)  According to Petitioner, these jail
3   records contained critical mental-health information, and the withholding of the records
4   constituted "classic sandbagging."  (Doc. No. 487 at 27; *see* Doc. No. 451 at 354.)  Petitioner has
5   established good cause for obtaining this information, as he may be entitled to relief if the facts
6   concerning Claim 20 are developed; accordingly, the Court will authorize this discovery.
7   However, it is unclear what else, if anything, Petitioner may be requesting in connection with
8   Claim 20; accordingly, to the extent that Petitioner seeks additional discovery regarding Claim
9   20, his request will be denied.

11                                              III

12        Good cause appearing therefor, Petitioner's Second Motion for Discovery is granted in
13   part and denied in part as indicated above.  Within thirty days after the present order is posted,
14   the parties shall file a joint statement that contains a proposed schedule for completing discovery.
15   The parties are reminded of the Court's previous order, (Doc. No. 441), that whenever a party
16   refers to a document that previously was filed in the present action but has not been e-filed, that
17   party shall e-file such document.

18                                                                          *It is so ordered.*

21   DATED:  *March 28, 2011*

                                          JAMES WARE
22                                        United States Chief District Judge

Case No. 5-97-cv-20618-JW
ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S SECOND MOTION FOR DISCOVERY
(DPSAGOK)